1                    IN THE UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF TEXAS
2                          HOUSTON DIVISION

3    _____ )
                                     )
     TERESA L. RIBELIN COOK,         )
4              Plaintiff,            )
                                     ) CIVIL ACTION NO.
5    VS.                             ) 4:19-CV-1495
                                     )
6    HARRIS COUNTY, KIM OGG,         )
     JOHN BREWER, AND BRYAN VACLAVIK ) 4:43 P.M.
7    _____ )

8

                             MOTION HEARING
9              BEFORE THE HONORABLE KEITH P. ELLISON
                            APRIL 29, 2019
10

     APPEARANCES:
11

     **FOR PLAINTIFF:**
12   MR. MICHAEL J. DURRSCHMIDT
     Hirsch & Westheimer PC
13   1415 Louisiana, 36th Floor
     Houston, Texas  77002
14   (713)220-9165

15   **FOR DEFENDANTS:**
     MR. JOHN ALLEN DOUGLAS
16   MR. SCOTT DURFEE
     MR. TOM BERG
17   Harris County Attorney's Office
     1019 Congress, 15th Floor
18   Houston, Texas  77002
     (713)274-5383
19

     **ALSO PRESENT:**
20   MS. TERESA RIBELIN COOK
     MR. BRYAN VACLAVIK
21

     **COURT REPORTER:**
22   Heather Alcaraz, CSR, FCRR, RMR
     Official Court Reporter
23   515 Rusk, Suite 8004
     Houston, Texas  77002
24   (713)250-5584

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.

16:43:26  1        **THE COURT:**  Good afternoon and welcome.  We'll turn to

2    Cook versus Harris County and take appearances of counsel,

3    beginning with plaintiff.

16:43:32  4        **MR. DURRSCHMIDT:**  Good afternoon, Your Honor.  Michael

5    Durrschmidt on behalf of Ms. Cook, and Ms. Cook is present in

6    the courtroom.

16:43:38  7        **THE COURT:**  Welcome.

16:43:40  8        **MR. DOUGLAS:**  Your Honor, Allen Douglas, county

9    attorney's office, on behalf of Scott Durfee and other

10   defendants, Harris County.

16:43:49 11        **MR. DURFEE:**  Technically, Judge, I'm not a defendant.

16:43:52 12        **MR. DOUGLAS:**  That's true.

16:43:53 13        **MR. DURFEE:**  Scott Durfee, general counsel for the

14   district attorney's office.  Mr. Berg and I are here, as well.

16:44:00 15        **THE COURT:**  Yes.  I know Mr. Berg.  Welcome.

16:44:02 16        Welcome to all of you.

16:44:05 17        **MR. BERG:**  Thank you.

16:44:05 18        **THE COURT:**  Okay.  This does not seem like it needed

19   to be a major piece of litigation.  It seems like we could work

20   this out and accommodate both the investigatory interest of the

21   county and your client's absolutely legitimate privileged

22   issues.

16:44:26 23        I mean, have you talked?  It seems like something we

24   could reason through together this afternoon and get everybody's

25   interest taken care of.

16:44:34  1          **MR. DURFEE:**  Yes, Your Honor.  I called

2    Mr. Durrschmidt about a week and a half or so ago and told him

3    that there's a mechanism in state court for these privilege

4    reviews under Article 1812, Code of Criminal Procedure.  We're

5    standing by ready to do that.

16:44:47  6          We're -- you know, these -- this is not an unusual

7    situation.  We just -- we just need to balance the privilege

8    issues against relevancy in the criminal proceeding, and the

9    state district judge is perfectly suited to handle that matter.

16:45:07 10         **MR. DURRSCHMIDT:**  Your Honor, the -- the state here is

11   looking at a retainer issue, the payment of retainer at the very

12   beginning of the case.

16:45:18 13         **THE COURT:**  I got that.

16:45:19 14         **MR. DURRSCHMIDT:**  And they've seized the entire file,

15   and they -- they have no reason to hold the file.  We're not

16   going to waive our privilege.  We're not going to waive our

17   right of privacy.

16:45:28 18         They need to turn the entire file back to us.  They

19   already have all the information they need.  They have the bank

20   records.  They have the financial records of the firm.  We're

21   not talking about those.  We're talking about --

16:45:39 22         **THE COURT:**  Have you had this discussion with

23   Mr. Douglas?

16:45:42 24         **MR. DURRSCHMIDT:**  No.  Basically, Mr. Douglas told me

25   I could go somewhere else and deal with this, and we have not

1   had a meaningful conversation whatsoever.

16:45:53  2          **MR. DOUGLAS:**  Your Honor, I'll just note that I was

3   brought in on Friday.

16:45:56  4          **THE COURT:**  Okay.  Sorry.  The conversation was with

5   somebody else.  I apologize.  I apologize.

16:46:02  6          Have you had the conversation with anybody on

7   defendant's side of the case?

16:46:05  8          **MR. DURRSCHMIDT:**  I had the one conversation after I

9   sent the letter asking for the file back.

16:46:09 10          **THE COURT:**  With Mr. Brewer?

16:46:12 11          **MR. DURRSCHMIDT:**  With --

16:46:13 12          **MR. DURFEE:**  Mr. Durfee, Your Honor.

16:46:15 13          **MR. DURRSCHMIDT:**  And the sum total of that

14   conversation was:  You can bring this up in front of the state

15   court, and we'll go deal with it there.  And when I asked him

16   why it was that they thought they could hold the files, he said,

17   "I'm new to the thing.  I don't know anything about it," and we

18   had no substantive discussion about it.

16:46:38 19          But she's entitled to proceed with her state court

20   divorce action.  She can't do that right now.

16:46:44 21          **THE COURT:**  I'm entirely sympathetic to your position.

22   I really am.  I'm just trying to see if there's not a way we can

23   accommodate both sides' interests.

16:46:52 24          **MR. DURFEE:**  Sure, Judge.  I mean, we've offered up --

25   previous counsel had been offered up an opportunity for a taint

1  team to review these things and get these things in a posture.

2  Also, we're perfectly willing, at this point, to make a copy of

3  all the files that she --

16:47:05  4        THE COURT:  Why do you need the file, other than the

5  retainer?

16:47:08  6        MR. DURFEE:  It's going to be a continuation of the

7  criminal investigation.  Ms. -- Mr. Woodfill, her attorney, is

8  currently accused -- at least under investigation for

9  misapplication --

16:47:18  10        THE COURT:  I understand that.  I understand that.

11  But the -- the -- in divorce actions, a lot about property

12  division and -- is there children involved?

16:47:25  13        MR. DURRSCHMIDT:  There is.

16:47:26  14        THE COURT:  -- and children, and it doesn't really

15  speak to the question of application of funds.  If you have the

16  information about the payment and whatever retention letter

17  there is, why do you need anything -- details about the divorce?

16:47:39  18        MR. DURFEE:  Well, Judge, again, I'm not in the

19  posture to speak to the merits of the investigation.  I did

20  bring Mr. Vaclavik, who is the chief fraud examiner for our

21  office and also one of the named defendants here.  He can

22  explain in more detail the relevancy of this information to

23  their investigation, if you'd like to hear from him.

16:47:54  24        THE COURT:  Well, I really didn't want to get into the

25  weeds on this.  I -- it just seems, to me, this is a fairly

1    linear issue that we could resolve cleanly without getting into

2    testimony.  I mean, you can -- you can discuss exactly what you

3    need, and Mr. Durrschmidt can get his file back, or Ms. Cook

4    can, and both sides' needs are accommodated.

16:48:28  5           Why -- why can't we do that?

16:48:31  6           MR. DURFEE:  We can, Judge, and that's the interactive

7    process that this taint team process would contemplate,

8    essentially, would be:  We show all the files that we have to

9    Mr. Durrschmidt and -- or whoever they want to bring over.  And

10   they say, you know, these files, these are -- these are files

11   that we are asserting privilege on.  We would say these are --

16:48:48 12          THE COURT:  But you don't really have any right to

13   look at those files at all.

16:48:52 14          MR. DURFEE:  We haven't looked at those files.

16:48:54 15          THE COURT:  Well --

16:48:55 16          MR. DURFEE:  But we -- what we're talking about would

17   be people who would be segregated from the investigation who

18   would be, at that point, pro- -- under a protective order.  It's

19   my understanding that these kind of --

16:49:04 20          THE COURT:  Why can't a judge look at them?

16:49:06 21          MR. DURFEE:  We're happy for the judge to do that, as

22   well, Judge.  We'd be happy for Judge Johnson, who issued the

23   search warrant, to do the file review on these matters of

24   privilege and make --

16:49:16 25          THE COURT:  Would that work?

16:49:21  1          **MR. DURRSCHMIDT:**  Judge, normally, before a judge

2    review is ordered, there has to be a basis for the review, and

3    we've heard no basis for any review.

16:49:32  4          This is a retainer, first day.  Everything that

5    follows that is outside the investigation.  There was either

6    money in the account, or there wasn't money in the account.

7    Everything after that is irrelevant here.

16:49:44  8          **THE COURT:**  Money in whose account?

16:49:45  9          **MR. DURRSCHMIDT:**  Their -- the retainer account, the

10   IOLTA account.  Their argument is that Mr. Woodfill took a

11   $75,000 retainer, deposited it into his IOLTA account, that the

12   IOLTA account had a negative balance; therefore, Mr. Woodfill

13   misappropriated funds.

16:50:00  14         That's the beginning, the middle and the end of the

15   investigation.  What happened after that, vis-a-vis the divorce,

16   vis-a-vis the communications regarding her divorce, her child,

17   her custody issues is irrelevant, and they shouldn't look at

18   them.  Nobody should look at these until there's a basis.

16:50:17  19         There's no fraud crime exception.  Ms. Cook is accused

20   of nothing.

16:50:22  21         **THE COURT:**  I understand that, but her attorney is,

22   and in an agency relationship, things get a little complicated.

16:50:28  23         **MR. DURRSCHMIDT:**  But -- but this is why I get back to

24   the point of the only issue that they've identified is that

25   initial deposit.  The deposit, the financial arrangement, the --

1    has nothing to do with the divorce file.

16:50:44  2            It's all --

16:50:44  3            **THE COURT:**  See, but I don't know if there were

4    subsequent correspondence about, "I need more money from you,

5    Ms. Cook," or, "I'm going to refund this money to you,

6    Ms. Cook," or anything like that.  I -- I just don't know.

16:50:57  7            Most attorneys, fee arrangements are pretty important,

8    and they do tend to generate communications.

16:51:06  9            **MR. DURRSCHMIDT:**  Result- -- resulting, in this case,

10   in a flat fee at the end of the day.

16:51:11  11           **THE COURT:**  Is the case over?

16:51:12  12           **MR. DURRSCHMIDT:**  No.  It's still pending.  That's why

13   we need the file.  There's a flat fee case.  It turned into a

14   flat fee case.  Mr. Woodfill agreed to carry the case forward

15   and charge no -- no further fees.

16:51:23  16           **THE COURT:**  Was that the initial --

16:51:25  17           **MR. DURRSCHMIDT:**  It was not the initial agreement,

18   no.

16:51:27  19           **THE COURT:**  What was the initial agreement?

16:51:28  20           **MR. DURRSCHMIDT:**  The initial agreement was an hourly

21   base fee arrangement.

16:51:37  22           **THE COURT:**  I guess we're going to need some

23   testimony.

16:51:39  24           Do you want to call your witness, then?

16:51:43  25           **MR. DOUGLAS:**  Sure, Your Honor.  I'm going to call

*Mr. Douglas Direct of Bryan Vaclavik*

1  Bryan Vaclavik.

16:51:49  2          **THE COURT:**  Okay.  If you would make your way up here,

3  Mr. Rivera will administer the oath before you take your seat.

16:51:54  4      *(Witness sworn.)*

16:52:08  5          **THE COURT:**  Okay.  That'll be your seat (indicating).

6  Try to speak so you can -- try to adjust the mic so you can

7  speak directly into it.

16:52:10  8          Okay.  You may inquire.

16:52:10  9          **MR. DOUGLAS:**  Sure.

16:52:10 10          **THE COURT:**  And try to adjust the mic so you can speak

11  directly into it, also.

16:52:14 12          **MR. DOUGLAS:**  All right.

16:52:15 13          **BRYAN VACLAVIK, DULY SWORN, TESTIFIED:**

16:52:15 14                  **DIRECT EXAMINATION**

16:52:16 15  **BY MR. DOUGLAS:**

16:52:16 16  **Q**   Mr. Vaclavik, if you could, tell us your full name and your

17  title.

16:52:20 18  **A**   My name is Bryan Scott Vaclavik.  My last name is spelled V,

19  as in Victor, A-C-L-A-V, as in Victor, I-K.  I'm currently

20  employed with the Harris County District Attorney's Office as

21  the chief fraud examiner in the white collar or financial crimes

22  division.

16:52:35 23  **Q**   And what's been your role in --

16:52:36 24          **THE COURT:**  Wait.  Before -- how long have you been

25  there?

*Mr. Douglas Direct of Bryan Vaclavik*

16:52:39  1          **THE WITNESS:**  I've been in the office, on and off, for

2    25 years.

16:52:42  3          **THE COURT:**  Can you walk me through your credentials

4    as an examiner?

16:52:46  5          **THE WITNESS:**  Yes.  I have a BS in finance, as well as

6    an MBA in accounting and finance.  I've been certified as an

7    expert witness in state court over 50 times.

16:52:55  8          **THE COURT:**  Do you have a CFE designation?

16:52:57  9          **THE WITNESS:**  Yes, sir, I do.

16:52:58 10          **THE COURT:**  Thank you.

16:52:59 11    **BY MR. DOUGLAS:**

16:53:00 12    **Q**   And could you talk to us about what you can, that's not

13    privileged, with regard to this case in your investigation

14    beyond the $75,000 that opposing counsel's already mentioned?

16:53:11 15    **A**   To respond to the 50- -- $75,000 initial payment, I think

16    they're referring to a example that I showed Ms. Cook when we

17    met with her that particular day in January.  It does not begin,

18    the middle, and end with the $75,000.

16:53:28 19        That was part of why we were trying to find out whether or

20    not Ms. Cook could provide us with all her invoices that she

21    received from Mr. Woodfill.  And we even subpoenaed her for

22    those records, and we've yet to get them from her.

16:53:43 23    **Q**   And so this is the January 18th, 2019 --

16:53:47 24          **THE COURT:**  You've subpoenaed whom?

16:53:49 25          **THE WITNESS:**  Ms. Cook.

*Mr. Douglas Direct of Bryan Vaclavik*

16:53:51  1  BY MR. DOUGLAS:

16:53:52  2  Q   So we have outstanding subpoenas --

16:53:53  3  A   Yes.

16:53:53  4  Q   -- she's not responding to?

16:53:55  5         THE COURT:  And those are for what?  Tell me again,

       6  for her other fee communications?

16:53:58  7         THE WITNESS:  For the invoices that Mr. Woodfill

       8  provided her.

16:54:01  9         THE COURT:  And were those before or after the $75,000

      10  payment, or both?

16:54:04 11         THE WITNESS:  They were way after.  They were after.

16:54:07 12  BY MR. DOUGLAS:

16:54:07 13  Q   How long has this divorce case been going on?

16:54:11 14  A   I want to say since 19- -- since 2013.

16:54:15 15  Q   2013.

16:54:15 16      And so the $75,000 that we've been speaking about earlier

      17  was paid at the beginning of that term, that period?

16:54:23 18  A   Correct.

16:54:24 19  Q   And these other invoices have followed?

16:54:27 20  A   Yes.

16:54:27 21  Q   Okay.  And that's what -- part of what we're looking at in

      22  reviewing a privilege log for this particular file?

16:54:37 23  A   Yes.

16:54:38 24  Q   Okay.

16:54:40 25         THE COURT:  Do you want any cross?

*Mr. Durrschmidt Cross of Bryan Vaclavik*

16:54:42  1    MR. DURRSCHMIDT:  Yes, please.

16:54:42  2                    CROSS-EXAMINATION

16:54:43  3    BY MR. DURRSCHMIDT:

16:54:46  4    Q    Is the investigation of -- financial investigation of

          5    Mr. Woodfill?

16:54:50  6    A    Yes.

16:54:50  7    Q    Is the investigation of Ms. Cook?

16:54:53  8    A    No.  Ms. Cook is not involved, no.

16:54:55  9    Q    Is there any allegation that she was engaged in any kind of

         10    fraud with Mr. Woodfill?

16:55:01 11    A    No.

16:55:03 12    Q    Does the -- your investigation simply need the invoices that

         13    Mr. Woodfill sent to Ms. Cook?

16:55:10 14    A    I don't know what else we're going to see in those files.

         15    Is it just financials?  Is it payment plans?  I don't know

         16    what's in there, so I couldn't tell you one way or the other.

         17    We need to look at it.

16:55:22 18    Q    Other than financial terms, i.e., invoices, payment plans,

         19    fee agreements, fee arrangements, are there any other documents

         20    that you need for your investigation?

16:55:31 21    A    Not at this time for me, no.  I don't know what the

         22    prosecutors would want to look at.

16:55:36 23             THE COURT:  But the communications between a lawyer

         24    and a client are absolutely privileged.  How does the state

         25    propose to deal with that issue?

*Mr. Durrschmidt Cross of Bryan Vaclavik*

16:55:45  1          THE WITNESS:  That is out of my realm.  That's

2    Mr. Brewer's involvement, not mine.

16:55:52  3    BY MR. DURRSCHMIDT:

16:55:52  4    Q    To the extent that you got invoices that were redacted to

5    extract privileged communication, would that satisfy your need

6    for the time being?

16:56:01  7    A    I believe the unredacted is what we're looking for.

16:56:05  8          THE COURT:  Would the -- let me -- are you saying

9    there's privileged information in the -- in the invoices?

16:56:13 10          MR. DURRSCHMIDT:  Your Honor, I haven't seen the

11   invoices, so I don't know.  If you were to look at my invoices,

12   there is a lot of information in my invoices.  I don't know what

13   Mr. Woodfill's invoices look like.

16:56:23 14          THE COURT:  Did you consider proceeding by -- by

15   subpoenaing Ms. Cook's records and not Mr. Woodfill's records?

16:56:30 16          THE WITNESS:  We wanted to talk to Ms. Cook outside of

17   Mr. Woodfill knowing, so that's why she was subpoenaed.

16:56:42 18          THE COURT:  Any further questions?

16:56:43 19   BY MR. DURRSCHMIDT:

16:56:43 20   Q    You're aware that that subpoena of Ms. Cook was put on hold

21   because of the January 18th, 2019, meeting?

16:56:51 22   A    I believe Mr. Polland accepted service on her behalf.  At --

23   what transpired between Mr. Brewer and Mr. Polland, I do not

24   know.

16:57:00 25   Q    Okay.

16:57:01  1          **THE COURT:**  I didn't follow that.  What now?  What did

  2  Mr. Polland do?

16:57:05  3          **MR. DURRSCHMIDT:**  The issue --

16:57:06  4          **THE COURT:**  Who does he represent?

16:57:07  5          **MR. DURRSCHMIDT:**  The issue was that the outstanding

  6  subpoena, as I understand it, was put on hold because of the

  7  meeting between Mr. Brewer, Mr. Polland and Ms. Cook --

16:57:20  8          **THE COURT:**  Okay.  And who does Mr. Polland represent?

16:57:22  9          **MR. DURRSCHMIDT:**  She -- he represented Ms. Cook

  10  earlier in trying to get the files back.

16:57:27 11          **THE COURT:**  In trying to deal with this issue, or in

  12  the divorce?

16:57:30 13          **MR. DURRSCHMIDT:**  This issue.

16:57:31 14          **MS. COOK:**  This issue, uh-huh.  This issue.

16:57:33 15          **THE COURT:**  Who represents Mr. Woodfill?

16:57:36 16          **MR. DURRSCHMIDT:**  I don't know.

16:57:38 17          **THE COURT:**  We don't know that yet?

16:57:41 18          **MR. DOUGLAS:**  I don't know.

16:57:41 19          **MR. DURRSCHMIDT:**  Your Honor, it seems to me -- well,

  20  I have nothing further.

16:57:44 21          **THE COURT:**  Any further questions?

16:57:45 22          Any redirect?

16:57:47 23          **MR. DOUGLAS:**  No.

16:57:47 24          **THE COURT:**  You may step down.  Thank you very much.

16:58:00 25          There -- this case raises a lot of tricky

1  jurisdictional issues, including *Younger*, that I'd rather avoid

2  if we -- if we can, as this cries out for a -- a practical

3  rather than a technically legal solution.

16:58:25  4          Can we generate some options?

16:58:30  5          **MR. DOUGLAS:**  Well, Your Honor, I mean, as Mr. Durfee

6  has mentioned earlier, we certainly stand ready to -- to review,

7  with opposing counsel, the files and to make a determination of

8  those things that can go forward -- back to Ms. Cook.

16:58:47  9          **MR. DURFEE:**  And, Your Honor, the other thing, the

10  exigency here is going to be restoration of the files so they

11  can proceed with their litigation.  We're perfectly happy to

12  produce all the files back in copies or the originals, with us

13  keeping copies.

16:59:02  14          **THE COURT:**  I think they deserve the originals back

15  with you keeping copies of whatever may be relevant to your

16  inquiry.  Has a judge offered -- the judge in the state court

17  offered to do any of this privileged review?

16:59:13  18          **MR. DURFEE:**  She's not been asked, and -- but I

19  know -- I know Judge Johnson well.  She would -- she would take

20  this on.

16:59:21  21          **THE COURT:**  That seems, to me, that -- it seems to me

22  that judge ought to carry the freight in this case rather than

23  this judge.

16:59:31  24          **MR. DURRSCHMIDT:**  Judge, it seems to me that the

25  county has the burden to show that there's a reason -- a

1  legitimate reason for the entirety of the file.  The testimony

2  today was they needed the invoices; they needed the payments.

3  They have redacted invoices, and they have the payments.  So I

4  don't know why they need anything more.  They have everything

5  that they need.

16:59:55  6          They need to give the entire file back.  They can't

7  maintain it.  The problem is:  What happens if the husband comes

8  in with a Freedom of Information Act request to see the files?

9  What happens if somebody has seen them?  They stand up here and

10  say, "We haven't looked at them."  We don't know whether they

11  have or they haven't.

17:00:10  12          And they're not entitled to these files.  These files

13  ought to come back.  The originals should come back with no

14  copies kept anywhere over at the county.  It's privileged.  It's

15  private.  It's her property.

17:00:22  16          We've got Fourth Amendment; we've got Fifth Amendment

17  rights here that are being trampled on.

17:00:27  18          **THE COURT:**  I'm not quarreling with anything you say.

19  I just don't know if this is the right place to resolve those

20  Fourth Amendment and 14th amendment issues.

17:00:35  21          **MR. DURRSCHMIDT:**  Well, if I can't bring a Fourth and

22  Fifth Amendment cause of action under 1983 to this Court --

17:00:40  23          **THE COURT:**  Tell me how I get around *Younger v.*

24  *Harris.*

17:00:43  25          **MR. DURRSCHMIDT:**  Because I think that 1983 says that

1    you have the jurisdiction to hear it, and I think that gets you

2    around *Younger*.  There is no other proceeding involving this

3    woman.  There's no criminal proceeding involving this woman.

4    There's a criminal proceeding involving a third party.

17:00:59   5    If Woodfill was in here saying, "Hey, give it back,"

6    and they were screaming *Younger*, I'd understand it.  They're not

7    trying to bring a claim against Ms. Cook.  *Younger* doesn't apply

8    here.

17:01:15   9    **THE COURT:**  Well, the reason *Younger* might is what if

10    I issue an order, and the judge in state court issues a

11    conflicting order?

17:01:26   12    **MR. DURRSCHMIDT:**  I think -- I think that, to the

13    extent there's a discovery request, right, that discovery

14    request can be taken up over there.  This is not a discovery

15    request.  This was a seizure.  This was an overly broad search

16    warrant.

17:01:47   17    They know they've got way more than they want.  They

18    don't want the files.  They don't want -- what they want is they

19    want a waiver of her privilege, and they want her to file a

20    complaint.

17:01:56   21    She hasn't filed a complaint.  She's not going to file

22    a complaint.

17:02:00   23    **THE COURT:**  If I had issued this order rather than the

24    judge in state court, could the state court then override my

25    order?

17:02:10  1        **MR. DURRSCHMIDT:**  I don't think so.  I think that the

        2   supremacy clause is going to control here, and I think that 1983

        3   gives you the jurisdiction to consider a Fourth and a Fifth

        4   Amendment right, which is exactly what we've brought, and we

        5   need to bring this here and not in the county.  We need to have

        6   somebody that's impartial that can look at this and say, "Wait.

        7   What are you doing?"

17:02:37  8        Think about this.  The state court judge had the

        9   opportunity to say, "Wait.  Before I issue a search warrant on a

       10   law firm, I need to temper it."  She didn't.  She issued a

       11   blanket search warrant that said get all the files.

17:02:51 12        **THE COURT:**  Well, I understand what you're saying, but

       13   I do recall that there was a federal judge that issued a

       14   subpoena for President Trump's personal lawyer, who took all of

       15   his files, and there didn't seem to be any federal inhibition in

       16   doing that.  I think some of us were startled by that, that a

       17   federal court would do it, but the law, in terms of lawyer files

       18   and alleged criminal violations, is a little murky right now.

17:03:21 19        I'm going to take a minute to talk to my colleagues.

       20   No one need rise.

17:03:25 21        *(Recess taken from 5:03 p.m. to 5:08 p.m.)*

17:08:24 22        **THE COURT:**  Keep your seat.  That's all right.

17:08:29 23        Okay.  I'll make this offer:  I'm happy to be the

       24   officer who does the review of the file, and I'll do so

       25   expeditiously, if you can agree on that.  If we're not going to

1    do that, I need to take this under advisement.  This raises

2    some -- if we're not going to work out a practical non- --

3    non-jurisprudential resolution, I'm going to need some time to

4    deal with these issues.

17:08:54  5    I just got the defendant's response this afternoon.  I

6    want to give both sides a fair adjudication.  So I'll plan to do

7    that, but I'm willing to help in any way that I can and -- just

8    reviewing the file.  I'll do it in the morning.  I'll get it

9    out, if that would be agreeable.

17:09:16 10    MR. DURRSCHMIDT:  Judge, my understanding is there's

11    127 boxes.  There's -- this -- this is what I'm talking about is

12    that this file is huge, and for them to say they need the

13    financial records and take 127 boxes -- I don't think you can do

14    it in the morning, is my point.

17:09:40 15    And I think my second point is if we can't work --

17:09:43 16    THE COURT:  If I'm just looking for invoices, I think

17    I can.

17:09:46 18    MR. DURRSCHMIDT:  Well, I'm happy -- I'm happy to turn

19    over the invoices, redact them where I think they need to be

20    redacted, and the checks, and they can give me back the files.

17:09:56 21    THE COURT:  Do you currently have the invoices?

17:09:57 22    MS. COOK:  I can get them.

17:09:59 23    MR. DURRSCHMIDT:  We can get them, Your Honor.

17:10:05 24    MS. COOK:  They have them.

17:10:05 25    MR. DURRSCHMIDT:  Your Honor, I think they've got

1 | them.

17:10:07 2 |            **MS. COOK:**  They showed them to me.

17:10:07 3 |            **MR. DURRSCHMIDT:**  They -- my client says they showed

4 | them to her.

17:10:11 5 |            **THE COURT:**  Okay.  Well, then, let's do that.

17:10:17 6 |      *(Sotto voce discussion amongst all defense counsel.)*

17:10:24 7 |            **MR. DURFEE:**  Your Honor, Mr. Brewer is not available.

8 | He just completed a -- that Antonio Armstrong, Jr. --

17:10:28 9 |            **THE REPORTER:**  I'm sorry?  I'm sorry.

17:10:31 10 |            **THE COURT:**  Come forward.  Your voice is not traveling

11 | well.

17:10:36 12 |            **MR. DURFEE:**  Yeah.  Sorry, Judge.

17:10:36 13 |            Mr. Brewer, who is the lead investigator -- lead

14 | prosecutor on this matter, is not available.  He was the lead

15 | prosecutor in that Antonio Armstrong, Jr., trial that just

16 | finished with the mistrial over in state district court.

17 | He's -- he's out today.

17:10:50 18 |            What I would like is an opportunity to consult with

19 | him and then -- and then communicate with the two of you as to

20 | your kind offer and express an opinion one way or the other.

17:11:00 21 |            **THE COURT:**  Let's get a date.  Let's get a time on our

22 | calendar when we're going to get back and at least hold hands

23 | together.  We can do it by telephone if you can't make it over

24 | here in person.

17:11:09 25 |            **MR. DURFEE:**  No, I can come over, Judge.

17:11:11   1          **MR. DURRSCHMIDT:**  It's easy for me to come over as

2     well, Your Honor.

17:11:13   3          **THE COURT:**  Okay.  Late afternoon sometime this week.

4     We have several evidentiary trials going on -- evidentiary

5     hearings.

17:11:21   6          Sometime later this week, Art?

17:11:24   7          **MR. DURRSCHMIDT:**  You want to say Wednesday, the 1st?

17:11:25   8          **THE COURT:**  That works for me.

17:11:30   9          **THE CASE MANAGER:**  We have the Wheeler class cert.

17:11:33  10          **THE COURT:**  Yeah.  But can't we do, like, 4:30 or

11     something?

17:11:37  12          **THE CASE MANAGER:**  4:30.

17:11:38  13          **THE COURT:**  4:30 on Wednesday.

17:11:41  14          **MR. DURFEE:**  Thank you, Your Honor.

17:11:42  15      *(Proceedings concluded at 5:11 p.m.)*

16                          -o0o-

17          I certify that the foregoing is a correct transcript

18     from the record of proceedings in the above matter.

19

20     Date:  May 29, 2019

21                         */s/ Heather Alcaraz*
                         Signature of Court Reporter
22

23

24

25